**ALLEN QUARRIES, INC., Respondent,**

v.

**Mike AUGE, Appellant.**

**No. 28349.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 30, 2008.

Nikki Cannezzaro, Franke, Schultz & Mullen, P.C., Kansas City, for Appellant.

Nathan J. Dawson, Law Offices of Nathan J. Dawson, LLC, Joplin, for Respondent.

DANIEL E. SCOTT, Judge.

Defendant Mike Auge ordered a load of crushed rock from Plaintiff Allen Quarries for a driveway project at Defendant's rural home. Plaintiff's business was crushing rock and delivering it in dump trucks. Plaintiff's owner, Larry Allen, had a commercial driver's license and personally delivered crushed rock to Plaintiff's customers. Mr. Allen had delivered Defendant crushed rock in the past, including two loads for the same driveway project several months earlier.

Defendant ordered the load in question by calling Mr. Allen, who knew it had recently rained, and asking Defendant if he "could get over it [the driveway] all right." Defendant indicated he was getting over it with his pickup. Defendant also said the roadbed was soft and it would be slippery at the bottom of the hill. Defendant did not say the rock had to be delivered that particular day.

Mr. Allen drove the load of crushed rock to Defendant's home. The loaded dump truck weighed 53,300 pounds. Mr. Allen got stuck several hundred yards up Defendant's long driveway. When he tried to back out, the truck slid off into a utility pole and was damaged.

Plaintiff sued Defendant for the truck damage in a two-count petition alleging breach of contract and negligent misrepresentation. Plaintiff alleged Defendant breached his contract with Plaintiff by supplying false information as to whether the roadbed could support the dump truck's weight. The negligent misrepresentation count alleged that Mr. Allen relied on such false information to Plaintiff's detriment.

The case was tried without a jury. Defendant and Mr. Allen testified. In closing argument, after both parties had rested, Plaintiff advanced a business invitee/failure-to-warn theory in addition to its pleaded contract and negligent misrepresentation claims. Defendant argued that no such claim had been pleaded. The trial court asked the parties to brief what it called this "latent defect" issue when they submitted their proposed findings of fact and conclusions of law. The court ultimately granted Plaintiff a $10,269.94 judgment, based on a premises liability/negligent failure-to-warn theory. Defendant appeals. We are to affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Point I

■ Defendant charges trial court error in granting judgment on an unpleaded premises liability/failure-to-warn theory, in that Plaintiff never sought to amend its petition and those issues were not tried by implied consent. Plaintiff argues, in reply, that the new theory was tried by implied consent because failure-to-warn evidence was admitted without objection.

■ A pleading's purpose is to limit and define the issues to be tried and to put the adversary on notice thereof. *City of St. Joseph v. St. Joseph Riverboat Partners,* 141 S.W.3d 513, 516 (Mo.App.2004). It is axiomatic that a trial court cannot grant judgment on a cause of action not pleaded. *Citibank S.D. v. Miller,* 222 S.W.3d 318, 321 (Mo.App.2007). A judgment is void to the extent it is based upon issues not raised by the pleadings. *Conduff v. Stone,* 968 S.W.2d 200, 205 (Mo. App.1998); *State ex rel. Mohart v. Romano,* 924 S.W.2d 537, 540 (Mo.App.1996).

However, Rule 55.33(b)([1]) provides that unpleaded issues tried by "implied consent" are treated in all respects as if they had been pleaded. This means unpleaded issues may be determined by the trial court when evidence is offered, without objection, bearing solely on those issues. *City of St. Joseph*, 141 S.W.3d at 516. But to fairly say a party implicitly consented to try a new issue, such evidence should warn that a new issue is being injected. Thus, the evidence in question cannot be relevant to any other issue before the trial court; it must bear solely on the new issue. *Id.; Conduff*, 968 S.W.2d at 205. It is the burden of the party contending that an issue was tried by implied consent to demonstrate that was so. *Conduff*, 968 S.W.2d at 205.

The unpleaded theory upon which judgment was granted required proof that (1) a dangerous condition existed on Defendant's premises which involved an unreasonable risk; (2) Defendant knew or by using ordinary care should have known of the condition; (3) Defendant failed to use ordinary care to warn of the danger; and (4) Plaintiff thereby suffered damage. *McLaughlin v. Hahn*, 199 S.W.3d 211, 214 (Mo.App.2006); MAI 22.03. Plaintiffs implied consent argument is based on two passages of Defendant's cross-examination totaling about 114 pages of transcript:

Q. [Plaintiff's counsel] Thank you, Judge. Mr. Auge, did you say any words that would warn Mr. Allen about the condition of the road bed, the new road bed past the utility pole?

A. We may have talked about the fact that it rained.

Q. Anything other than that?

A. Not that I recall.

Q. Did you tell him anything about the—or warn him about the make-up of the road in terms of it being made of sandy soil?

A. It's not sandy.

Q. It's not sandy?

A. No.

Q. Did you say anything to him that would have warned him about the proximity of the electrical pole to the road, then?

A. I don't think there would be a need to. He'd already been past that pole.

and

Q. [Plaintiff's counsel] Well, from the edge of the road bed to the point where the terrain starts again, what kind of a slope are we talking about there? Can you define that with your arm? Is it ninety-degree slope or is it forty-five degree slope?

A. Seventy-five.

Q. Seventy-five? So, that'd be a fairly steep slope, correct?

A. Oh, yes.

Q. And in the course of discussing this with Mr. Allen you didn't let him know that that was the condition of that road bed, is that correct?

A. Correct.

Solely from this cross-examination, Plaintiff argues that "[c]learly, Plaintiff indicated to Defendant that a new issue of failure to warn was being raised." We disagree. This Cross-examination arguably was relevant, for example, to Defendant's pleaded defense of comparative fault. The degree to which Mr. Allen (and thus Plaintiff vicariously) bore fault for getting his truck stuck, or for the consequences of his extrication attempt, may have been affected by any warnings he previously received. Similarly, we cannot say such questioning had no relevance to the justifiable reliance or proximate cause

---

1. Rule references are to Missouri Court Rules (2007).

elements of Plaintiff's negligent misrepresentation claim.[2]

Defendant vigorously argues that the quoted cross-examination was relevant to issues already in the case; it was unaware the trial court was considering a new theory until closing argument; and it was prejudiced by not having an opportunity to defend the new theory. We view the record similarly. Plaintiff has not persuaded us that the cited questioning bore solely on a premises liability theory, and could not have been relevant to any other trial issue. *Conduff*, 968 S.W.2d at 205. Thus, Plaintiff has not shown that the impleaded premises liability theory was tried by implied consent. As we observed in *Citibank S.D. v. Miller*,

> Filing a petition would serve little purpose if the court before which the case was filed were free to disregard the pleading and enter judgment on a theory of recovery other than that set forth in the petition. If that were permissible, an opposing party would be at the whim of a plaintiff's last minute decision to seek judgment on any theory it wished although that theory differed from the cause of action the opposing party was prepared to defend.

222 S.W.3d at 322. Point I is well taken.

### Point II

■ Nonetheless, we must affirm the judgment if we can do so on any reasonable theory consistent with the pleadings and supported by the evidence. *American Standard Insurance Co. v. May*, 972 S.W.2d 595, 601 (Mo.App.1998). Thus, Defendant further claims the judgment is unsupportable under Plaintiffs pleaded theories (breach of contract and negligent misrepresentation) for want of evidence that Defendant made false statements to Plaintiff as alleged in the petition.

We agree. Defendant called Mr. Allen to deliver a third load of rock to the same driveway where he delivered two earlier loads. Mr. Allen, knowing it had recently rained, asked if he could "get over it all right." Defendant indicated it was soft, but he was getting over it in his pickup. There is no evidence this was untrue, nor does Plaintiff so contend.

■ Plaintiff instead argues that Defendant, "though not expressly stating that Plaintiff's dump truck would be supported by the road bed, did make implicit representations that a reasonable person would construe as meaning the Plaintiff's dump truck could safely pass over the road bed," and "[a] reasonable person in Plaintiff Allen's situation, and in that context, would have understood those statements to mean that Plaintiffs dump truck could pass over the road bed safely and without incident." We need not decide if Plaintiff reads too much into Defendant's comments, or if liability could be supported under some properly pleaded theory. Failure to provide evidence that Defendant's statements were false is fatal to recovery for negligent misrepresentation. *Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc.*, 109 S.W.3d 200, 206 (Mo.App.2003); *M & H Enterprises*, 35 S.W.3d at 904–05; *Cundiff v. Umfleet*, 21

---

**2.** The elements of a negligent misrepresentation claim are: (1) the speaker supplied information in the course of his business; (2) due to the speaker's failure to exercise reasonable care, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of such reliance, the listener suffered pecuniary loss. See, e.g., *Roth v. Equitable Life Assur. Soc.*, 210 S.W.3d 253, 260 (Mo.App.2006); *Dueker v. Gill*, 175 S.W.3d 662, 669–70 (Mo.App.2005); *M & H Enterprises v. Tri–State Delta Chemicals, Inc.*, 35 S.W.3d 899, 904 (Mo.App.2001).

S.W.3d 127, 130–32 (Mo.App.2000). Thus, we agree with Point II as well.[3]

### Conclusion

We are to "give such judgment as the court ought to give" in these circumstances, and dispose finally of the case unless justice otherwise requires, Rule 84.14. Accordingly, we reverse the judgment that was entered in Plaintiff's favor, and remand the case with directions to enter a judgment in favor of Defendant.

PARRISH, P.J., and BATES, J., concur.

---

3. Plaintiff does not contend the judgment can be salvaged on a breach of contract theory.