**Donna ALMOND, d/b/a Rockwood Community Well, Respondent,**

v.

**Steve V. BELL, Sr. Trust, Jewell V. Bell Trust, Steve Bell and Jewell Bell, Appellants.**

No. 28495.

Missouri Court of Appeals, Southern District, Division Two.

April 28, 2008.

---

Jim S. Green, P.C., Sikeston, for Appellants.

Briney Welborn, Bloomfield, for Respondent.

DANIEL E. SCOTT, Judge.

Appellants ("defendants")[1] owned a subdivision lot and were building a home on it. Alleging she was "lawfully possessed of an Easement" to operate a community water system on the same lot, respondent ("plaintiff") obtained an injunction in her favor. We cannot sustain the judgment as it is unsupported by substantial evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Harris v. Brown*, 218 S.W.3d 630, 632 (Mo.App.2007). Accordingly, we reverse.

## Facts and Background

Kirkwood Heights Subdivision was platted in rural Butler County in the 1940s. The developers put a water system—well, pump, 1000-gallon elevated tank, and water lines—on a thin Lot 5A in the center, but did not dedicate the lot to those purposes.

The developers transferred the water system ("the well") and a specifically described easement on Lot 5A ("recorded easement") to Jack and Grace Ferries in 1967, but did not record the easement until 1969.

In 1978, the recorded easement was transferred of record to Billy and Marie Walker, both now deceased. Their daughter, Mary Ann Walker, testified that her mother operated the well after her father died, then sold it to John Cash. Attorney Robert Dempster drew up the transfer paperwork, but Mary Ann Walker does not have it or recall when the transfer occurred. The real estate records show no post-1978 transfer of the recorded easement, and no other easement regarding the well, nor do the parties know of any such document.

Plaintiff has lived north of Lot 5A for over ten years. She started running the well in 1997, having "received" it from Marvin Sisk, who had run it "possibly" a year or two. Plaintiff did not know how Sisk got the well, but he was hard to find when he ran it. When she approached him about a $400 repair bill incurred in his absence, Sisk indicated disinterest in continuing to run the well. He gave plaintiff his handwritten billing/payment records, and she started taking care of the well and billing.

There were about 15 well customers in 1997, but only plaintiff and two others at the time of trial. Although plaintiff blamed service disruptions from defendants' Lot 5A construction activities, a 600-customer public water system now serves the area. Plaintiff uses public water at her property across the road, and could get public water at her residence for a $700–800 tap charge.

In 2004, defendants bought Lot 5A and most of Lot 6. They knew the well served a few people, but wanted to build a nice summer home and eventually take the water tower down. Plaintiff filed her suit in August 2005.

Shortly after plaintiff filed suit, a county health representative tested the well. By EPA and DNR standards, the water was unsatisfactory for drinking purposes, but "private" wells with less than 15 hookups are not government regulated.

1. Although the subject property is held by revocable trusts, we refer to all defendants collectively for convenience.

### Express Easement

█ The second amended petition, filed the day of trial, sought relief on the basis that plaintiff "lawfully possessed" the recorded easement. The trial court's judgment does not expressly so find, nor does the record support such a conclusion. Plaintiff effectively conceded, both at trial and oral argument, that the recorded easement cannot be traced to her and no document grants her an easement over or across Lot 5A. A title examiner testified similarly at trial.

### Prescriptive Easement

█ Plaintiff argues for a prescriptive easement, but never pleaded that theory or its elements[2] in her initial or amended pleadings.[3] A pleading's purpose is to limit and define the issues to be tried and to put the adversary on notice thereof. *See Allen Quarries, Inc. v. Auge*, 244 S.W.3d 781, 783 (Mo.App.2008), wherein we further observed:

> Filing a petition would serve little purpose if the court before which the case was filed were free to disregard the pleading and enter judgment on a theory of recovery other than that set forth in the petition. If that were permissible, an opposing party would be at the whim of a plaintiff's last minute decision to seek judgment on any theory it wished although that theory differed from the cause of action the opposing party was prepared to defend.

*Id.* at 785, *quoting Citibank S.D. v. Miller*, 222 S.W.3d 318, 322 (Mo.App.2007).

█ Moreover, plaintiff testified that she started running the well in 1997; eight years before she filed suit and nine years before trial. The prescriptive period is ten years. *Shapiro Bros.*, 205 S.W.3d at 274. She claims she can tack with prior operators to reach the ten-year threshold, but the trial record as to such persons, and whether their use was adverse to then-current Lot 5A owners, is insufficient to support such a judgment. The law does not favor prescriptive easements; a party claiming one must show its elements by clear and convincing evidence. *Id.*

### Conclusion

We need not reach defendants' other claims of error. The judgment, being unsupported by substantial evidence, must be and hereby is reversed.

PARRISH, P.J., and BATES, J., concurs.

---

2. A prescriptive easement is established by use that is continuous, uninterrupted, visible, and adverse for a period of ten years. *Shapiro Bros., Inc. v. Jones–Festus Properties, L.L.C.*, 205 S.W.3d 270, 274 (Mo.App.2006).

3. Nor does she claim such theory was tried by consent under Rule 55.33(b).