Linda LEONARD, and Charles Roth,
and Liza S. Roth, Appellants,

v.

Norman E. ROBINSON, and Susan
W. Robinson, Respondents.

No. ED 91313.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 10, 2009.

William B. Beedie, Farmington, MO, for Appellants.

Kevan L. Karraker, Farmington, MO, for Respondents.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Landowners Charles and Liza Roth (the Roths) and Linda Leonard (Leonard) (collectively, Appellants) appeal the trial court's judgment denying them a prescriptive easement over a roadway on real property owned by Norman and Susan Robinson (Respondents). Leonard similarly appeals the denial of an easement by necessity over the same roadway. The Roths also appeal the trial court's judgment denying them adverse possession of two parcels of Respondents' real property. We find there was substantial evidence to support the trial court's judgment, the judgment was not against the weight of the evidence, and the trial court did not erroneously declare the law, and thus we affirm.

### Background and Procedural History

The Roths, Leonard, and Respondents all own property in adjacent parcels near Highway C in Washington County, Missouri. Farthest east is Respondents' land which encompasses land both to the north and south of Highway C. Respondents be-

gan leasing this land in 1986 from Valle Barr (Barr), and subsequently purchased the land from Barr in 2004. A dirt roadway (the roadway) begins on the north side of Highway C, runs west through a portion of Respondents' land, then continues west through the Roth land to Leonard's property. Respondents were under the impression that Barr permitted use of the roadway for community events when she lived on the property, and it was their intention to continue to allow the permissive use, though the testimony did not reveal any conversations between the parties regarding permissive or non-permissive use of the roadway. During the time they were leasing the property from Barr, from 1986 until 2004, Respondents claim they did not see any vehicular traffic on the roadway, though in January 2006, they began noticing Mr. Roth use the roadway approximately twice a week. In early 2007, as a result of a dispute with the Roths, Respondents erected a gate across the roadway preventing others from passing.

Also on Respondents' land is an old fence near the boundary line between the eastern edge of the Roth property and the western edge of Respondents' property, running to the north and south of Highway C. While the Roths were under the impression the fence was the actual boundary line between the properties, a 2006 survey revealed the fence was approximately 132 feet into Respondents' property, creating a 3.19 acre strip of land between the actual boundary line and the fence on the north side of Highway C, and a 3.72 acre strip of land between the actual boundary and the fence to the south of Highway C. Mr. Roth testified that his family used the northern 3.19 acres for logging, picking greens, hiking, and other recreational activities. The Roths used the southern 3.72 acres for farming and grazing cattle. Mr. Roth even erected a "bull fence" approximately

three feet away from the original fence for the purpose of grazing cattle on the southern strip, and a cross-fence across the wooded portion of the southern tract pursuant to a soil and water conservation program to keep the cattle out of the wooded areas.

The Roth property borders Respondents' property to the west, and is comprised of approximately 120 acres which the Roths purchased in 1971, when Respondents' land was still owned by Barr. The Roths claimed that prior to the erection of the gate, they had used the roadway to access their land north of Highway C since they purchased their property in 1971.

Leonard owns 139 acres north of Highway C, which she purchased in 1990. Her land runs in an "L" shape, starting to the west of the Roth property and then bordering the Roth and Respondents' properties to the north. Leonard testified to using the roadway to access her land from 1990 until 2006, because her land does not touch Highway C, and the roadway was her only access to her property. However, Leonard also testified that another neighbor was allowing her access across their property to reach her land after Respondents erected the barrier over the roadway.

In early 2006 a dispute erupted between the Roths and Respondents, prompting Respondents to barricade access to the roadway. In response, on May 26, 2006, Appellants filed a Petition to Quiet Title (Petition) in the Washington County Circuit Court against Respondents. In Count I of the Petition, Appellants alleged they and their predecessors had used the roadway across Respondents' land for ingress and egress to their own property in an open, notorious, exclusive, hostile, and adverse manner for more than thirty years,

until Respondents took actions to interfere with their use and enjoyment of the easement. Appellants requested the trial court declare their property benefited by the easement and issue temporary and permanent injunctions such that Respondents would cease interference with Appellants' alleged easement rights. In Counts II and III of the Petition, the Roths alleged that they, and their predecessors, had long recognized the fence as the boundary line between their property and Respondents' property. The Roths asserted that they and their predecessors used and possessed the two tracts of land, 3.19 acres and 3.72 acres, that Respondents actually owned on the Roths' side of the fence, in an open, notorious, exclusive, adverse, and hostile manner for more than thirty years, and requested the trial court declare them the owners of those tracts of land.

A bench trial on the dispute was held on September 15, 2007. On December 31, 2007, the trial court entered its Judgment for Respondents on all three counts, finding Appellants did not prove their case by a preponderance of the evidence. As to Count I, the trial court found Appellants failed to meet their burden of showing use for the prescriptive period and that the use was adverse. The trial court found Appellants failed to produce evidence of a claim of right to the use of Respondents' property for the roadway. The trial court found that the undisputed testimony showed that any use by Appellants had been permissive, and thus Appellants failed to meet their burden on any claim of right. The trial court also found Appellants failed to prove that Respondents had notice of the use, its character, and of Appellants' claims of right.

Regarding Count II, the claim for adverse possession of the tract north of Highway C, the trial court found that no evidence was presented to establish that the fence had at any time been acknowledged by anyone other than the Roths to be the boundary line between the properties and that the Roths' occasional recreational use did not establish the requisite "hostile, actual, open and notorious, exclusive" use.

Finally, the trial court found in Count III that the Roths failed to prove "hostile, actual, open and notorious, and exclusive" use of the wooded section of the 3.72 acre tract south of Highway C. The trial court further found that while the Roths established their use of the pasture land within the 3.72 acre southern tract, they did not produce evidence of the dimension of the pasture land, thereby precluding the trial court from entering judgment in favor of the Roths.

On January 28, 2008, Appellants filed their Motion to Amend Judgment, Motion to Set Aside Judgment, Motion for New Trial, Motion to Introduce Additional Evidence and Motion to Set Supersedeas Bond on Appeal, which the trial court overruled on May 12, 2008. Appellants subsequently filed their Notice of Appeal. This appeal follows.

### Points on Appeal

Appellants present four points on appeal. In their first point, Appellants allege the trial court erred in failing to establish and declare a prescriptive easement for Appellants over the roadway. Appellants allege Respondents failed to provide substantial evidence that the use of the roadway was permissive and thus the trial court erred in finding Appellants' roadway use was permissive, instead of adverse.

In their second point, the Roths assert the trial court erred in rejecting their request for quiet title to the 3.19 acre tract north of Highway C between the fence line and actual boundary line. The Roths as-

sert the trial court's finding that the fence was never acknowledged as the boundary line between the adjoining owners was not supported by substantial evidence because the fence was never challenged as the boundary line by Barr or Respondents.

In their third point, the Roths claim the trial court erred in rejecting their request for quiet title to the 3.72 acre tract south of Highway C between the fence line and the actual property boundary line. The Roths argue the trial court's finding that they did not show actual use of the wooded southern portion of the 3.72 acres is not supported by substantial evidence because the Roths conducted the same use on the southern portion as the northern portion, except for the year prior to the trial.

In the fourth and final point on appeal, Leonard asserts the trial court erred in finding that her property did not require the establishment of an easement by necessity. Leonard asserts that, while her claim was not contained within the pleadings, the issue of necessity was tried by consent of the parties because both sides presented evidence regarding the question of Leonard's landlocked status.

### Standard of Review

When reviewing court-tried cases, we follow the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, "unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* We exercise the power to set aside a judgment on the ground that it is "against the weight of the evidence" with caution and a firm belief that the judgment is wrong. *Id.*

We will defer to the factual findings of the trial court who is in the superior position to assess the credibility of the witnesses and consider the evidence in the light most favorable to the trial court's ruling. *Custom Muffler and Shocks, Inc., v. Gordon P'ship*, 3 S.W.3d 811, 817 (Mo. App. W.D.1999). We ignore all contrary evidence and inferences. *Moore v. Quirk*, 81 S.W.3d 717, 719 (Mo.App. S.D.2002).

### Discussion

### Point I—Roth and Leonard Prescriptive Easement Over Roadway

To establish a prescriptive easement over the roadway, Appellants were required to establish that their use was "continuous, uninterrupted, visible and adverse for a period of ten years." *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504, 508 (Mo. banc 1993). Because the law does not favor their creation, the elements for a prescriptive easement must be proven by clear and convincing evidence. *Moore*, 81 S.W.3d at 719; *Moss v. Ward*, 881 S.W.2d 238, 241 (Mo.App. S.D. 1994). Whether a particular use establishes a prescriptive easement is a question of fact to be inferred from the circumstances and the nature and character of the use. *Whittom*, 851 S.W.2d at 508.

Examining the elements of a prescriptive easement, we first look at the requirement that the use in question be "continuous." For a use to be "continuous," it need not be constant, however there must be "no break in the essential attitude of the mind required for adverse use." *Id.* It is sufficient for a use to qualify as "continuous" if the use is used "at such times by the users as their convenience and business needs required." *Moss*, 881 S.W.2d at 241 (internal citations omitted).

To qualify as "adverse," the use need not be under a belief or claim of right that is legally justified. *Whittom*, 851

S.W.2d at 508. Nor is it required that the adverse use be exclusive because the claimant of an easement does not claim to possess the whole title and exclude the owner from it for all purposes, but only claims the right to make certain use of the land. *Id.* All that is necessary for a use to be adverse is the "non-recognition of the owner's authority to permit or prohibit the continued use of the land." *Harmon v. Hamilton,* 903 S.W.2d 610, 612 (Mo.App. S.D.1995). Whether adverse use is present is often inferred, rather than proven directly. *Whittom,* 851 S.W.2d at 509.

■■ Finally, to establish the required ten-year period, the claimant must show continuous use for ten years, though the ten-year period need not be the ten years immediately preceding the filing of the lawsuit. *Moore,* 81 S.W.3d at 721. Claimants may sometimes tack their adverse possession on to the time of a grantor's possession to establish the ten-year period. *Id.* Once the ten-year period has run, the possessor is vested with title. *Id.*

■ While a prescriptive easement requires a use that is "continuous, uninterrupted, visible, and adverse for a period of ten years," use that is permissive cannot be grounds for a prescriptive easement. *Id.* at 719. "Where a use has been open, continuous, visible and uninterrupted for a period of longer than ten years, a presumption arises that the use was adverse and under a claim of right and the burden shifts to the landowner to show that the use was in fact permissive." *Moss,* 881 S.W.2d at 242. Upon a showing of evidence of permissive use, the presumption of adversity disappears. *Harmon,* 903 S.W.2d at 613. Where a use originates with permission, it remains permissive "unless and until there is a positive assertion of a right hostile to that of the owner which is made known to him." *Id.* "The matter of whether use was with permission is a matter involving the credibility of witnesses which should be resolved by the trier of fact." *Id.*

■ The trial court found Appellants' use was, at one time, permissive. Appellants argue all the elements for a prescriptive easement were present, and that there was no substantial evidence to support a finding of permissive use. Viewing the record in the light most favorable to the trial court's judgment, and deferring to the trial court's findings of fact, we find there was sufficient evidence to support the trial court's finding that Appellants' use began as permissive use. We defer to the trial court's finding on this issue.

Respondents testified that, to their knowledge, Barr consented and gave her permission to members of the community to use the roadway to access community events approximately thirty or thirty-five years prior. While Appellants did not specifically request permission from Respondents to use the roadway, Respondents further testified that it was their intention to continue the permission granted by Barr for members of the community to use the roadway. Respondents testified that this permission continued until problems developed between their family and the Roths. Furthermore, Respondents testified that they were unaware of any use of the roadway by either the Roths or Leonard.

The applicable standard of review requires us to view the evidence in the light most favorable to the judgment and to ignore contrary evidence. *Moore,* 81 S.W.3d at 722. Conflicts in evidence are for the trial court to resolve and the facts must be taken in accordance with the result reached. *Moss,* 881 S.W.2d at 243. Viewing the record in the light most favorable to the judgment, we find that sufficient evidence exists to support the trial

court's finding that Appellants' use began as permissive. Point I is denied.

### Points II and III—Roth Adverse Possession, North and South Tracts of Land

The Roths argue in their second and third points on appeal that the trial court erred in rejecting their claim for adverse possession of the 3.19 acre tract north of Highway C between the fence line and the actual boundary line, and the 3.72 acre tract south of Highway C between the same fence line and the actual boundary line.

■ "To establish title to a tract of land by adverse possession, a claimant must prove by a preponderance of evidence that his possession of the land was (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years." *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo.App. E.D.1998). Failure to establish any one of these elements will defeat a claim for adverse possession. *Id.* When determining if the facts warrant a finding that the elements of adverse possession have been met, each case is viewed in light of its own unique circumstances. *Id.* Much depends on the location, character, and use to which the property in question can reasonably be put. *Id.*

■ Reviewing the elements of adverse possession, we begin with the requirement that the possession must be "hostile and under a claim of right." This element requires that the possession be "opposed and antagonistic to the claims of all others, and the claimant must occupy the land with an intent to possess it as his or her own." *Id.* Even if the claimant mistakenly believed he had title to the land and occupied the land as his own, the "hostile" element is satisfied. *Kohler v. Bolinger*, 70 S.W.3d 616, 620 (Mo.App. W.D.2002). For possession to be "hostile," a claimant need not have knowledge of the actual title holder or intend to deprive the actual title holder of his title. *Id.* at 621. All that is required is that the claimant intend to occupy the land as his own and actually do so. *Id.* While this element is a question of intent, the intent is often inferred from a claimant's acts of dominion over the land in question. *Flowers*, 979 S.W.2d at 469.

■ "Actual" possession is defined as that which "is manifested by acts of occupancy which indicate a present ability to control the land and an intent to exclude others from such control." *Id.* Whether a particular possession qualifies as "actual" depends on the nature and location of the property and the potential uses to which it could be put. *Id.* A combination of continuing acts of "occupying, clearing, cultivating, pasturing, erecting fences or other improvements" on the property can serve as evidence of actual possession, though these acts are not conclusive. *Dobbs v. Knoll*, 92 S.W.3d 176, 181 (Mo.App. E.D. 2002) (internal citations omitted).

■ The element of "open and notorious" possession is demonstrated by proof that a claimant's occupancy was "conspicuous, widely recognized, and commonly known." *Id.* The "open and notorious" element affords the actual landowner reasonable notice, either actual or constructive, that an adverse claim of ownership is being made against his property. *Flowers*, 979 S.W.2d at 469–70.

■ "Exclusive" possession means that the claimant must hold the property for himself and not for another. *Id.* at 470. To satisfy this element a claimant must show he "wholly excluded" the owner of the property from possession for the requisite period. *Id.*

■ The final element to prove adverse possession is "continuous" use for a

period of ten years. "Continuous" use or possession means without lapse and uninterrupted, for the entire statutory period. *Id.* While the ten-year period must be consecutive, as with prescriptive easements, they need not be the ten years prior to the filing of the lawsuit. *Id.* Once the ten-year period has run, the claimant is vested with the title and the record owner is divested of his ownership. *Id.* The claimant, however, must show that all of the required elements were consistently met during the ten-year period of continuous possession. *Id.*

*A. Point II—3.19 Acre Tract North of Highway C*

 The Roths contend in their second point on appeal that the trial court erred in not granting them quiet title to the 3.19 acre tract north of Highway C between the fence line and the actual boundary line. The trial court found no evidence that the fence had been acknowledged by anyone to be a boundary line between the adjoining properties. Further, the trial court found that the Roths' testimony of their occasional recreational use of the tract did not rise to the level of "hostile, actual, open and notorious, and exclusive" use required for adverse possession. Viewing the evidence in the light most favorable to the trial court's finding, we find the trial court's ruling was supported by substantial evidence.

The challenge presented to the Court is determining whether there exists substantial evidence to support the trial court's ruling that there was not sufficient evidence to support a finding of adverse possession. To provide the appropriate appellate review of the trial court's actions, we must examine whether the record of the evidence presented at trial was sufficiently deficient to support the trial court's ruling.

While the record shows that the Roths presented evidence that they had used the northern tract for occasional hunting, hiking, and other recreational activities, this occasional use does not necessarily rise to the level required of an adverse possession claim. *See Flowers,* 979 S.W.2d at 470–71. Furthermore, while Appellants rely on the fence line to establish their claim, the trial court's ruling was not against the weight of the evidence when it found the fence line was not acknowledged by the adjoining landowners. While the Roths presented evidence that Barr may have assisted in the occasional repair of the fence, no evidence was presented to the trial court that either Barr or Respondents specifically acknowledged the fence as the actual boundary line.

Reviewing the evidence presented by the Roths, we find there were adequate deficiencies for the trial court to find the Roths failed to prove at least one required element in their adverse possession claim. For instance, based upon the record before us, the trial court could have found that the Roths failed to prove their "hostile" use because they did not show their intent to possess the land as their own due to the lack of "acts of dominion over the land." *See Flowers,* 979 S.W.2d at 469. Similarly, the trial court could have found the element of "actual" use missing because the evidence failed to sufficiently show the Roths' "present ability to control the land and the intent to exclude others from such control." *See Dobbs,* 92 S.W.3d at 181. The element of "open and notorious" could have been found lacking by the trial court because the Roths did not present evidence that their use was of such a nature to afford Respondents reasonable notice of their adverse claim to the property. *See Flowers,* 979 S.W.2d at 470. Upon reviewing the evidence in the light most favorable to the trial court's ruling, we find the ruling was not against the weight of the evidence. Point II is denied.

## B. Point III—Tract South of Highway C

■ The Roths similarly argue the trial court erred in failing to grant them quiet title to the land south of Highway C between the fence line and the actual boundary line. The trial court's judgment divided the southern tract of the Roths' adverse possession claim into two parcels. The trial court denied the Roths' claim to the wooded southern parcel of the tract because the Roths failed to show "hostile, actual, open and notorious, and exclusive" use because there was no evidence that the Roths actually used that parcel of the property. The trial court denied the Roths' claim to the pasture land that comprised the northern portion of the tract because the Roths failed to produce any evidence of the dimension, or legal description, of that portion of the tract. The trial court held the Roths had the burden of proving the portion of property actually used by them. The Roths' failure to present evidence of the dimension or legal description of the property they claimed to have adversely possessed defeated their claim. The Roths argue on appeal that not only did they meet the requirements of adverse possession for the entire tract, but also that the trial court had the authority to order a survey line between the northern pasture land and the wooded southern portion.

As with the portion of land north of Highway C in Point II, we defer to the trial court's findings as to the evidence regarding the tract of land south of Highway C. From the record before us, we do not find that the trial court's judgment was against the weight of the evidence. The trial court is in a superior position to assess the credibility of the witnesses and thus we defer to its findings on such matters. *See Flowers*, 979 S.W.2d at 469.

The Roths argue that the trial court should have ordered a survey to establish the legal description and parameters of the parcel of property in question, which would then have provided the information necessary to partition the tract and grant the Roths adverse possession over the pasture land. As support for their argument, the Roths rely on the Western District Court of Appeals in *Dillon v. Norfleet*, 813 S.W.2d 31 (Mo.App. W.D.1991). In *Dillon*, the court examined the trial court's decision to order a survey to mark out the easement in question. *Id.* at 33. The court noted that "[e]vidence which will enable the easement to be located is a necessary part of the plaintiff's case, and the judgment must contain a definite description of the easement based upon the evidence." *Id.* at 32. The court went on to find that the trial court did "in fact have such inherent power and authority" to order a survey in order to establish a proper legal description in a case where land boundaries are at issue. *Id.* at 33.

Of critical importance here is that while *Dillon* notes a trial court has the authority to order a survey, *Dillon* does not require a trial court to exercise such authority. Appellants do not cite to any cases mandating that a trial court use its inherent authority. Moreover, the Roths have cited no cases which relieve them of their burden to introduce evidence that will allow the adversely possessed land to be located. Thus, while the trial court in this case had the discretionary power and authority to order a survey, there is no requirement that the trial court exercise that power. Appellants failed to meet their burden in establishing a proper legal description for the property at issue, and also failed to demonstrate that the trial court's decision not to order a survey constituted error. Point III is denied.

*Point IV—Leonard Easement by Necessity Over Roadway*

In the fourth, and final, point on appeal, Leonard argues the trial court erred in not granting her an easement by necessity over the roadway. Leonard argues that while this issue was not raised in the pleadings, the issue of an easement by necessity was tried by consent of the parties. We disagree. The record does not contain evidence that the issue of an "easement by necessity" was tried by consent.

The purpose of pleadings is to "limit and define the issues to be tried and to put the adversary on notice thereof." *Allen Quarries, Inc. v. Auge,* 244 S.W.3d 781, 783 (Mo.App. S.D.2008). "It is axiomatic that a trial court cannot grant judgment on a cause of action not pleaded." *Id.* Indeed, judgments are void to the extent they are based on issues not raised by the pleadings. *Id.*

Missouri Supreme Court Rule 55.33(b), however, provides an avenue to present and try issues not contained in the pleadings where such issues are tried by "implied consent." *Id.* at 784. Under this Rule, unpleaded issues are treated as if they had been pleaded and may be determined by the trial court when evidence is offered, without objection, bearing solely on those issues. *Id.* The evidence presented to support the unpleaded issue cannot be relevant to any other issue before the trial court, and must bear solely on that new issue. *Id.* "It is the burden of the party contending that an issue was tried by implied consent to demonstrate that was so." *Id.* Leonard has not met her burden.

The record before us fails to show that the issue of an easement by necessity was tried by consent during trial. The record lacks evidence that was presented solely on the issue of "necessity" and which had no bearing on the prescriptive easement issue properly pleaded. We are unable to find sufficient evidence that would have given Respondents proper notice that the issue of necessity was to be tried by consent. Furthermore, Leonard failed to present evidence that all of the elements required to establish an easement by necessity were satisfied. Although Leonard presented evidence that her property does not touch Highway C, she failed to present evidence that her property touches no other public road, or that the easement she seeks is one of strict necessity, and not mere convenience. Accordingly, Point IV is denied.

### Conclusion

The judgment of the trial court is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.