**Ronald D. COOPER and Joanna M. Cooper, Appellants,**

v.

**Demmaree CARNS, Respondent.**

**No. WD 68148.**

Missouri Court of Appeals, Western District.

Aug. 26, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 2008.

Dennis J. Campbell Owens, Kansas City, MO, for appellant.

Lynn K. Ballew, Harrisonville, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., RONALD R. HOLLIGER and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, J.

Ronald and Joanna Cooper appeal the judgment of the trial court in favor of Demmaree Carns on her claim of adverse possession. In their sole point on appeal, the Coopers assert that the trial court erred in entering judgment for Ms. Carns because she failed to prove that her use or possession of the disputed land was hostile. The judgment is affirmed.

### Factual and Procedural Background

The parties are owners of adjacent property in Mill Hollow Farms, a forty-acre parcel divided into four lots of ten acres each. The Coopers own Lot 3, and Ms. Carns owns Lot 4 directly south of the Coopers' lot. Each of the lots in the subdivision is heavily wooded fronting to the east on Miller Road. A ravine runs north and south through the Coopers' lot and turns west near the southern border of the lot.

Ms. Carns and her former husband, James Carns, bought Lot 4 in 1975. In November 1975, the Carnses signed an easement with Kansas City Power and Light Company granting the utility the right to install an electric transformer and underground power lines on the northern part of their lot. The transformer was installed immediately east of the point where the ravine turns and begins to run west. The Carnses believed the transformer was positioned on the northern boundary of their property when it was actually placed approximately sixteen feet within Lot 3. The area south of the ravine and transformer to the property line dividing Lot 3 and Lot 4 is the disputed area in this case. It measures approximately 140 feet long and 30 feet wide at it widest point. The Carnses believed the disputed area was within their Lot 4.

After installation of the transformer, the Carnes began constructing their house and a garage barn within their lot south of the disputed area. One of the subdivision restrictions provided for a fifty foot setback of structures from the property line. The Carnses contacted Sandy Overby, the owner of Lot 3 at the time, to inform him that the garage barn might be within fifty feet of the property line. Mr. Overby was not concerned about the violation of the setback restriction and did not have a problem with where they placed the home and garage barn.

The Carnses also cleared the disputed area of brush and undergrowth and installed in it two gravel turnarounds off of the driveway. The two turnarounds, in the shape of a "Y," were approximately twenty feet long. The turnaround to the west (turnaround no. 1) was continuously used to park or turn around vehicles. The turnaround to the east (turnaround no. 2) was used to park or store a Ford tractor and its accessories. The Carnses utilized the remainder of the disputed area as a garden area.

Mr. and Ms. Carns divorced in 1980. In 1984, Dennis Delozier moved into Ms. Carns's residence and became a member of her household. Upon moving into the household, Mr. Delozier began parking his 1953 truck that he had previously used in his business in the area east of turnaround no. 2. Ms. Carns and Mr. Delozier also parked a jeep at that site.

In 1983, John Barthol purchased Lot 3 from Mr. Overby and had the property surveyed. The survey showed that Ms. Carns's garage barn encroached into the disputed area on Lot 3 by a couple of inches and that the turnarounds encroached several feet into the area. Mr. Barthol testified that he showed Ms. Carns and Mr. Delozier the property line as indicated by the survey and how the garage barn encroached onto Lot 3. He did not,

however, voice an objection to the encroachment. Mr. Barthol also testified that he placed steel stakes on the north and south borders of his lot after the survey was done. Ms. Carns and Mr. Delozier testified that Mr. Barthol never talked to them about the property line or encroachments and that they never saw the steel stakes marking the property line.

In 1987, Ms. Carns and Mr. Delozier built a pet cemetery in the disputed area. In 1988, they built a wooden footbridge over the ravine. The bridge provided access between the two lots. That same year, Mr. Barthol sold Lot 3 to Curt Shatto and provided him with the 1983 survey. Mr. Barthol also told Mr. Shatto about the encroaching garage barn. Mr. Shatto testified that Mr. Barthol never told him about steel stakes that he placed on the property boundaries and that he never found such stakes while he owned the lot. Mr. Shatto never discussed the survey, boundary lines, or encroachment of the garage barn with Ms. Carns or Mr. Delozier. Mr. Shatto acknowledged that the ravine served as a natural geographic dividing line between the two lots and as the owner of Lot 3, he never occupied, possessed, or utilized the disputed area south of the ravine. Instead, Mr. Shatto was aware that Ms. Carns and Mr. Delozier occupied and maintained the disputed area. They used the area as a turnaround, garden, pet cemetery, and, in 1994, constructed a sixteen foot by sixteen foot garden shed in the area where Mr. Delozier had parked his 1953 truck. The truck was moved further east in the disputed area after the shed was constructed.

The Coopers purchased Lot 3 from Mr. Shatto in 1995. At the time of the purchase, they were given the 1983 survey and learned that the garage barn encroached onto Lot 3 by a couple of inches

and that the turnarounds encroached several feet into the lot.

Mr. Cooper testified that he gave Mr. Delozier a copy of the 1983 survey in 1997 when he was thinking about installing a fence along the property line. Ms. Carns and Mr. Delozier testified, however, that they did not receive the 1983 survey from Mr. Cooper until 2003.

Ms. Carns and Mr. Delozier continued to maintain and occupy the disputed area during the Coopers' ownership of Lot 3. In 1995, they installed a wrought iron fence and gate around the existing pet cemetery. They also replaced the footbridge over the ravine in 1995 or 1996. In September 2003, Ms. Carns and Mr. Delozier asphalted the two gravel turnarounds after Ms. Carns became legally blind and Mr. Delozier had a leg amputated. After the turnarounds were paved, Mr. Cooper consulted the 1983 survey and determined that the corner of the garage, the asphalt turnarounds, and the garden shed were encroaching onto Lot 3. At this time, the Coopers made their first objection to Ms. Carns regarding the encroachments on their property. They asked Ms. Carns and Mr. Delozier to share in the cost of having a survey done to determine the property line and told them that they expected any improvements to be relocated off their property. Ms. Carns and Mr. Delozier refused to pay for the survey and did not agree to relocate improvements.

The Coopers had a survey done in March 2004. The survey showed eight specific encroachments into the disputed area: the corner of the garage barn, the turnarounds, the pet cemetery, the garden shed, the wooden footbridge over the ravine, the garden, and Mr. Delozier's 1953 truck. The Coopers filed a petition in ejectment in March 2005 asking the trial court to order Ms. Carns to remove and refrain from using any of their property

and to award damages. Ms. Carns filed an answer and counterclaim to quiet title in the portion of Lot 3 lying south of the ravine claiming that she had acquired ownership of the disputed tract of land by adverse possession. A bench trial was held in May 2006, and thereafter the trial court entered judgment against the Coopers on their petition in ejectment and in favor of Ms. Carns on her counterclaim to quiet title. This appeal by the Coopers followed.

## Standard of Review

 In a court-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Ortmann v. Dace Homes, Inc.*, 86 S.W.3d 86, 89 (Mo.App. E.D.2002). All evidence and inferences are viewed in the light most favorable to the judgment, and all contrary evidence and inferences are disregarded. *Ortmann*, 86 S.W.3d at 88. The appellate court defers to the trial court's determination of the credibility of witnesses. *Id.* at 88–89. "The trial court may believe all, part, or none of any witness's testimony." *Id.* at 89.

## Hostile Possession

In their sole point on appeal, the Coopers contend that the trial court erred in entering judgment in Ms. Carns's favor on her adverse possession claim. They claim that Ms. Carns failed to prove that her use or possession of the disputed tract of land was hostile.

 To prevail on a claim of adverse possession, the party asserting adverse possession must prove that the possession was (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous

for a period of ten years. *Id.* The Coopers contend that Ms. Carns failed to satisfy the hostile element; thus, it is the only element addressed. *Kohler v. Bolinger*, 70 S.W.3d 616, 619 (Mo.App. W.D.2002).

 Possession is hostile if it is antagonistic to the claims of all others. *Martens v. White*, 195 S.W.3d 548, 555 (Mo. App. S.D.2006); *Kohler*, 70 S.W.3d at 620. The claimant must occupy the land with the intent to possess it as her own. *Martens*, 195 S.W.3d at 555; *Kohler*, 70 S.W.3d at 620. The claimant's occupancy must be in defiance of, rather than in subordination to, the rights of others. *Martens*, 195 S.W.3d at 555. Intent may be inferred from her acts of dominion over the land. *Id.* The claimant need not intend to take away something that belongs to another or be indifferent as to the facts of the legal title. *Williams v. Frymire*, 186 S.W.3d 912, 919 (Mo.App. S.D.2006); *Lancaster v. Neff*, 75 S.W.3d 767, 773 (Mo.App. W.D. 2002). It is the intent to possess rather than the intent to take from the true owner that governs. *Williams*, 186 S.W.3d at 919. Even if the claimant mistakenly believes she had title and occupied the land as her own, the hostile element is satisfied. *Lancaster*, 75 S.W.3d at 773.

 The Coopers assert that Ms. Carns's possession was not hostile because she sought and obtained the tacit permission of the title owner of the land and on another occasion, received the express permission of Mr. Cooper. Permissive use of land will not support a claim of adverse possession because hostile possession is lacking. *Brokhausen v. Waubansee*, 65 S.W.3d 598, 600 (Mo.App. S.D.2002).

First, the Coopers argue that Ms. Carns's possession or use of the disputed area was permissive from the beginning because she and Mr. Carns contacted Sandy Overby in 1976 because of their concerns as to the placement of the residence and garage barn near the boundary

line. The record shows, however, that the Carnses were concerned that the garage barn was within fifty feet of the boundary line, which violated the subdivision restriction's fifty foot setback rule for structures and that Mr. Overby only consented to allow their improvement to be built within the setback area. The record further reveals that only a couple of inches of the garage barn actually encroached into the disputed area in Lot 3 and that the Carnses did not know until 2003 that the disputed area south of the ravine and transformer was not part of their lot. Nothing in the record demonstrates that the Carnses sought permission, or that Mr. Overby granted permission to them, to possess or utilize any part of Lot 3.

The Coopers also argue that the permissive nature of Ms. Carns's possession of the disputed area was established by evidence that she and Mr. Delozier received express permission from Mr. Cooper to replace the footbridge over the ravine in 1995 or 1996. Specifically, Mr. Cooper testified that he encountered Ms. Carns and Mr. Delozier when they were replacing the footbridge. According to Mr. Cooper, Ms. Carns commented, "[M]aybe Ron doesn't want this bridge over on this." Mr. Cooper responded, "[N]o, it's fine, you can go ahead and install it, put it in." It was within the trial court's prerogative to believe or disbelieve Mr. Cooper's testimony. *Ortmann,* 86 S.W.3d at 89. The trial court specifically found that except for the consent of Sandy Overby in 1976 to allow an improvement to be built within the setback area, none of the owners of Lot 3 gave permission to Ms. Carns to possess or utilize the disputed area. This court will defer to the trial court's determination of witness credibility. *Id.* at 88–89. No other evidence was offered that the Coopers permitted Ms. Carns to possess and utilize the disputed area. The evidence demonstrates that Ms. Carns had continually possessed and used the disputed area from 1988 to 2003, at a minimum, without permission of the owners of Lot 3. The ten year element for adverse possession " 'must be consecutive years and need not be the ten years just prior to the filing of the law suit.' " *Kohler v. Bolinger,* 70 S.W.3d 616, 619 (Mo.App. W.D.2002) (citation omitted).

The record reveals that Ms. Carns's possession of the disputed area was hostile for the purpose of establishing adverse possession. After the transformer was installed by the utility company in 1975, Ms. Carns mistakenly believed that the area south of it and the ravine was part of her lot. She and Mr. Carns cleared the area of brush and undergrowth and installed two turnarounds in it and planted a flower garden. Over the years, she and Mr. Delozier built a pet cemetery and garden shed and parked Mr. Delozier's 1953 truck on the property. They also built a footbridge over the ravine and eventually asphalted the turnarounds. Ms. Carns continuously maintained and utilized the disputed area from 1976 until the present. Ms. Carns did not learn of the actual property line until 2003 when the Coopers showed her the 1983 survey and complained of the encroachments. Even then, Ms. Carns continued to use the property and refused to acquiesce to the Coopers' demand to remove the improvements. Her occupancy of and acts of dominion over the disputed area showed her intent to possess it as her own. Ms. Carns satisfied the hostile element. The point is denied.

The judgment of the trial court is affirmed.

ELLIS, P.J., and HOLLIGER, J., concur.