Paul ROHNER, Respondent,

v.

Patricia BEETS, et al., Appellant,

Patricia Beets Revocable Living
Trust, Appellant.

No. WD 75327.

Missouri Court of Appeals,
Western District.

April 9, 2013.

Cory L. Atkins and Mark M. Haddad, Kansas City, MO, for respondent.

George E. Kapke, Lee's Summit, MO, for appellants.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Patricia S. Beets and the Patricia S. Beets Revocable Living Trust (collectively "Beets") appeal the trial court's entry of a judgment awarding title by adverse possession to a triangular sliver of land between two residential lots to Paul Rohner ("Rohner"). Beets argues that Rohner's possession of the disputed sliver of land was not hostile for the requisite ten year limitations period because she gave Rohner permission to cross her property.

We affirm.

### Factual and Procedural Background [1]

On May 15, 2001, Rohner purchased Lot 29 in Block T at Lake Lotawa-

---

1. We view the evidence in the light most favorable to the Judgment. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 216 n. 2 (Mo.App. W.D.2012) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010)). The Judgment states that the parties "requested findings of fact and conclusions of law." The transcript in fact reflects that Rohner's counsel made a request at the beginning of trial for "findings of fact and conclusions of law" in the judgment. Though this was sufficient to require the trial court to identify the "grounds for the decision" under Rule 73.01(c), it was not sufficient to require the trial court to make factual findings. *See Berlin v. Pickett*, 100 S.W.3d 163, 167 (Mo.App. W.D.2003) ("[E]ven if a request for findings of fact under Rule 73.01 is made, a trial court need not make findings of fact unless the movant clearly and unequivocally specifies the controvert-

na, Missouri. An existing tree line ran north-south, and formed a natural division between Lot 29 and Lot 30 to the west. Rohner believed the tree line to be the western boundary for his lot. Rohner used his lot consistent with this belief. Rohner maintained the area up to the tree line. Rohner made improvements to his lot near the tree line. These improvements included the construction of a pavestone retaining wall along the north boundary of Lot 29 in 2001.[2] The west end of the retaining wall ended at the tree line. The improvements also included the placement of limestone rocks along the tree line, the planting of numerous bushes and a tree near the tree line, and the placement of mulch up to the tree line. The appearance of Lot 29 up to the tree line was "finished and manicured," where Lot 30 to the west of the tree line was a "more natural, less manicured area."

On December 22, 2008, Beets purchased Lot 30. Beets already owned Lot 31 to the west of Lot 30. In 2009, a contractor told Beets that in his opinion, the eastern property line for Lot 30 extended east of the tree line to the metal frame of a wood stack. The trial court did not find that Rohner was advised of this conversation, whether Beets agreed with the contractor, or that Beets took any immediate action in response to this conversation.

In 2009, Beets cleared Lot 30 and removed a small cabin from the lot. She also filled in a gulley on the lot. Beets did not make any improvements to the area east of the tree line.

In June 2010, Rohner wanted to rebuild his pavestone retaining wall. For ease of access, Rohner wanted to bring construction materials and equipment to the retaining wall by crossing over Lot 30. Rohner asked Beets if he could cross Lot 30 for this purpose. Beets gave him this permission in exchange for an agreement to "black out" a few exterior lights that bothered Beets.[3] Rohner's rebuilt the retaining wall. The west end of the retaining wall continued to run to the tree line.

In August 2011, Beets surveyed Lot 30 and learned that her eastern property line was east of the tree line. The location of the actual eastern property line for Lot 30 in relation to the tree line created a triangular sliver of property (the "Disputed Tract") containing 292.07 square feet.[4]

In October 2011, Beets cut down the bushes and the tree Rohner had planted in the Disputed Tract. Beets also moved the part of the pavestone retaining wall located in the Disputed Tract and the limestone rock Rohner had placed in the Disputed

ed fact issues."). Thus, we are not limited in our review of the "grounds for the decision" articulated in the Judgment to only the factual findings set forth in the Judgment, but are permitted to view all of the evidence and the reasonable inferences therefrom favorable to the Judgment.

2. Lake Lotawana lies to the north of Lot 29. A parkway owned by the Lake Association lies in between Rohner's retaining wall and the lake.

3. Beets claimed at trial that this permission was set forth in a letter she gave Rohner. Rohner denied receiving a letter from Beets,

but admitted that Beets verbally gave him permission to cross Lot 30 to rebuild the retaining wall in exchange for blacking out a few exterior lights. The substance of the letter is not materially different from the verbal discussion Rohner acknowledges having with Beets.

4. "Judgments should describe with reasonable certainty the land adjudicated therein, both in ejectment and actions to determine title." *Watson v. Mense*, 298 S.W.3d 521, 528 (Mo. banc 2009). A metes and bounds legal description for the Disputed Tract is set forth in the trial court's judgment. That legal description need not be repeated here.

Tract. Beets placed large flower pots in the Disputed Tract.

Rohner filed suit against Beets seeking to quiet title to the Disputed Tract by adverse possession. Rohner also sought damages for trespass. Beets filed a counterclaim for trespass.

Following a bench trial, the trial court entered judgment in favor of Rohner on his claim to quiet title to the Disputed Tract by adverse possession. The trial court also awarded Rohner damages in the amount of $6,630.00 on his claim of trespass. The trial court entered judgment in favor of Rohner and against Beets on Beets's counterclaim for trespass.

Beets appeals.

## Standard of Review

In this court tried case, "we follow the dictates of Rule 73.01." *Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo.App. S.D. 1997). "Thus, we review both the law and the evidence giving due recognition to the superior position of the trial court to judge the credibility of the witnesses." *Id.* "The judgment must be sustained unless it is without substantial evidentiary support, unless it is against the weight of the evidence or unless it erroneously declares or applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Analysis

In her single point on appeal, Beets argues that the trial court erred in entering judgment in favor of Rohner on Rohner's adverse possession claim because the permission she gave Rohner to cross Lot 30 in June 2010 destroyed Rohner's hostile possession of the Disputed Tract before the ten year limitations period ran. We disagree.

"To acquire title by adverse possession ..., possession must be: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of [ten] years." *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo.2009). "The party claiming ownership by adverse possession has the burden of proving the claim by a preponderance of the evidence." *Id.* "The failure to establish any one of the elements will necessarily defeat" a claim of adverse possession. *Brokhausen v. Waubansee*, 65 S.W.3d 598, 600 (Mo.App. S.D. 2002).

Here, Beets concedes that Rohner's use of the Disputed Tract was actual, open and notorious, and exclusive for the requisite ten year limitations period. Beets also concedes that Rohner's use of the Disputed Tract was hostile from May 2001 until June 2010. Beets argues only that when she gave Rohner permission in June 2010 to cross over Lot 30 to rebuild the retaining wall, she "unequivocally interrupted [Rohner's] hostile possession of the [Disputed Tract] ... thereby defeat[ing] [Rohner's] claim of adverse possession" before the requisite ten year limitations period had run. [Appellant's Brief, p. 9]. Because Beets's claim on appeal is limited to whether her grant of permission destroyed Rohner's hostile possession of the Disputed Tract that is the only element of adverse possession we need address. *Cooper v. Carns*, 263 S.W.3d 729, 733 (Mo.App. W.D.2008).

As we noted in *Cooper*:
Possession is hostile if it is antagonistic to the claims of all others. The claimant must occupy the land with the intent to possess it as her own. The claimant's occupancy must be in defiance of, rather than in subordination to, the rights of others. Intent may be inferred from her acts of dominion over the land. The

claimant need not intend to take away something that belongs to another or be indifferent as to the facts of the legal title. It is the intent to possess rather than the intent to take from the true owner that governs. Even if the claimant mistakenly believes she had title and occupied the land as her own, the hostile element is satisfied.

263 S.W.3d at 733 (internal citations omitted).

As Beets concedes, Rohner's possession of the Disputed Tract between May 2001 and June 2010 was hostile. Rohner believed the Disputed Tract to be within the legal boundaries of Lot 29. His belief was manifested by improvements to, and maintenance of, the Disputed Tract. Those improvements were open, notorious, and obvious to Beets since at least 2008 when she acquired Lot 30, if not sooner.[5] Rohner's occupancy of the Disputed Tract was in every respect consistent with using the tree line as the western property line for Lot 29 to the exclusion of all others.

Rohner's use of the Disputed Tract and his belief that he owned the Disputed Tract did not change between June 2010 and October 2011. Beets nonetheless claims that Rohner's use of the Disputed Tract during this time period was not hostile. Beets argues that the hostility of Rohner's use was destroyed in June 2010 when Rohner sought and received her permission to cross the undisputed portion of Lot 30 to rebuild the retaining wall within the Disputed Tract.

■ It is true that a "[p]ermissive use will not support a claim of adverse possession because hostility is lacking." *Brokhausen*, 65 S.W.3d at 600. This legal principle is neither mysterious nor complex in its application. If an occupier secures permission to possess land, the occupier is not possessing "in defiance of, [but] rather ... in subordination to," the rights of the owner, the antithesis of hostile possession. *Cooper*, 263 S.W.3d at 733.

■ The challenge where permissive use is asserted is in determining whether permission was secured *to use the land in dispute.* This is a factual determination, as " '[t]he matter of whether a use [of disputed land] was with permission is a matter involving the credibility of witnesses which should be resolved by the trier of fact.' " *Leonard v. Robinson*, 276 S.W.3d 868, 874 (Mo.App. E.D.2009) (quoting *Harmon v. Hamilton*, 903 S.W.2d 610, 613 (Mo.App. S.D.1995)).

Here, it is uncontested that Rohner sought and secured Beets's permission to "cross Lot 30" for the purpose of conveniently accessing and rebuilding the existing retaining wall. Thus, the issue before the trial court was whether this constituted permission to use and possess the Disputed Tract.

The trial court made the following factual findings relevant to this issue:

11. [Rohner's] pave-stone wall [was] installed on Lot T 29 in June 2001. The western edge of this pave-stone wall ended at the Tree Line and in the Disputed [Tract].

. . .

15. In 2010 [Rohner's] retaining wall was rebuilt.

16. In order to access the wall to rebuild it and make other improvements, [Beets] granted [Rohner] use of Lot 30 to access Lot T 29 in exchange for blacking out lights that bothered [Beets].

---

**5.** Beets owned Lot 31 for some period of time before purchasing Lot 30. Lot 31 is two lots east of Lot 29.

The trial court drew the following relevant legal conclusions:

8. From May 2001 until October 14, 2011, [Rohner] did not have permission from any owner of Lot 30 to use the Disputed [Tract] and his possession was hostile to the true owner.

. . .

10. [Rohner's] claim of adverse possession was not interrupted by [Beets's] specific grant of permission to use Lot T 30, as [Beets's] grant of possession was only to access Lot 29 by going over lot 30. [Beets's] grant was to use only a portion of Lot T 30 to access and gain entry to Lot T 29. *There is no evidence of any grant of possession [sic] to use the [Disputed Tract].*

(Emphasis added.) In essence, the trial court weighed the evidence, determined the credibility of the witnesses, and concluded that the permission Rohner sought and secured from Beets to cross Lot 30 to replace the retaining wall was not permission to use the Disputed Tract. Pursuant to *Leonard,* and our standard of review, we need only determine whether this was a reasonable inference supported by the evidence. We conclude that it was.

Rohner believed the tree line to be the western property line for Lot 29 from May 2001 until late 2011. Rohner improved and maintained the Disputed Tract throughout that time frame, and the retaining wall as originally constructed encroached into the Disputed Tract. When Rohner sought permission to "cross Lot 30," he was not seeking permission to cross or use the Disputed Tract (land he believed he owned), but was only seeking permission to cross the land west of the tree line he believed Beets owned. The retaining wall and other improvements made by Rohner in the Disputed Tract

were open and notorious, and were thus known or reasonably known to Beets. Beets knew Rohner was seeking permission to cross her property with construction materials so he could more conveniently access and rebuild the retaining wall. Yet, Beets expressed no objection to the location of the existing retaining wall or to Rohner's plan to rebuild the retaining wall. In fact, Beets took no action consistent with a belief that she owned the Disputed Tract until after she secured a survey in August 2011. Based on this evidence, we cannot conclude that the trial court erroneously determined that Beets's general grant of permission to cross Lot 30 was not a grant of permission to use or possess the Disputed Tract.

As noted, Beets does not contest the trial court's factual findings. Beets argues only that the trial court committed legal error by "misappl[ying] the law to the facts that he found."[6] Beets argues that her general grant of permission to cross "Lot 30" constituted an exercise of dominion and control over *all* land within the actual legal boundaries of Lot 30, destroying Rohner's hostile use of the Disputed Tract as a matter of law. It is thus Beets's position that when permission is extended by broad reference to a legal tract or platted lot, the fact-finder must conclude as a matter of law that hostility is defeated as to any use within the legal boundaries of the broadly referenced tract, without regard to contrary evidence of the parties' intent.

Beets cites no authority for this novel proposition, but claims support can be analogously drawn from *Ross Farms, Inc. v. Moore,* 873 S.W.2d 308 (Mo.App. S.D. 1994) and *Leonard,* 276 S.W.3d 868. Neither case assists Beets.

6. Beets's counsel made this statement during oral argument.

In *Ross Farms,* adverse possession was sought over a disputed strip of land to the south and east of the defendants' residence. *Id.* at 309. The evidence indicated that "both parties used part of the disputed area cooperatively as a driveway and turning area for vehicles for several years." *Id.* There was also evidence that the defendants mowed and tended a garden in the area. *Id.* The trial court concluded that the defendants had permission to use the disputed area. *Id.* Specifically:

There was testimony from stockholders of plaintiff that defendants were given permission to use *the land* while defendants' testimony was that there was no permission. Two of the share owners of plaintiff testified that defendants had been given permission. Defendants testified that they had never sought permission as *they thought they owned it.*

*Id.* (emphasis added). The Southern District affirmed. *Id.* at 310. Contrary to Beets's contention, *Ross Farms* does not suggest adoption of a bright line rule of law that compels the conclusion that hostility is defeated by permission generally extended by broad reference to a legal tract or platted lot. Instead, *Ross Farms* reinforces the peculiarly factual nature of determining the intended scope of permission. *Id.* at 309 ("Permissive use is con-trary to a showing of adverse possession as hostile possession is lacking. The trial court did not have to believe defendants even if their testimony was uncontradicted."). *Cf. Cooper,* 263 S.W.3d at 734 (holding "none of the owners ... gave permission ... **to possess or utilize the disputed area,**" and that "[n]o other evidence was offered that the [owners] permitted [the claimant] to **possess and utilize the disputed area**") (emphasis added); *Newbill v. Forrester–Gaffney,* 181 S.W.3d 114, 120 (Mo.App. E.D.2005) (holding that "substantial evidence supports the trial court's determination that ... **use and maintenance of the side yard** was permissive") (emphasis added); *Brokhausen,* 65 S.W.3d at 599–600 (holding no evidence of hostile use where court believed owner's testimony that he gave "permission **to use the disputed tract**" and "informed [claimant] of his claim to the disputed tract and that he would permit [its use] until it was surveyed") (emphasis added).

In *Leonard,* the Eastern District affirmed the trial court's finding that use of a roadway across one parcel of land by the owner of an adjacent parcel of land had been with the permission of all relevant owners, defeating the claimant's attempt to seek a prescriptive easement over the roadway.[7] 276 S.W.3d at 874–75. *Leon-*

---

7. "Acquiring an easement by prescription is 'akin to the acquisition of title to real estate by adverse possession.'" *Moore v. Quirk,* 81 S.W.3d 717, 721 (Mo.App. S.D.2002) (quoting *Jacobs v. Roschevitz,* 20 S.W.3d 598, 600 (Mo. App. S.D.2000)). Thus, as with adverse possession, a permissive use will not permit establishment of a prescriptive easement. *Id.* at 719. Despite their similarities, prescriptive easements and adverse possession vary under Missouri law in one important respect. The burden of proof in an adverse possession case is by a preponderance of the evidence. *Watson v. Mense,* 298 S.W.3d 521, 526 (Mo.2009); *see also Morrison v. Bomer,* 195 Mo. 535, 94 S.W. 524 (1906) ("It devolved upon the plaintiff to show ... adverse possession by a pre-ponderance of the evidence."); *Chilton v. Nickey,* 261 Mo. 232, 169 S.W. 978 (1914) ("[O]ne claiming by adverse possession ... must show such adverse possession by a preponderance of the evidence."). The only exception is where an adverse possession claim involves family members, elevating the burden of proof to clear and convincing evidence. *Sleepy Hollow Ranch LLC v. Robinson,* 373 S.W.3d 485, 495–96 (Mo.App. S.D. 2012). In contrast, claimants in all prescriptive easement cases are required to establish their right by clear and convincing evidence. *Leonard,* 276 S.W.3d at 873 ("[T]he elements for a prescriptive easement must be proven by clear and convincing evidence.").

*ard* did not involve a grant of permission by broad reference to a legal tract or platted lot. Instead, the grant of permission was specific to the roadway over which the prescriptive easement was sought. *Id.* at 870–72. *Leonard* thus does not assist Beets's attempt to advocate for a bright line rule of law requiring attribution of permission to *all* land within a broadly referenced legal tract or platted lot without regard to the evidence. In fact, in stark contrast, *Leonard* reinforces that " 'whether a use [of disputed land] was with permission is a matter involving the credibility of witnesses which should be resolved by the trier of fact.' " 276 S.W.3d at 874 (quoting *Harmon,* 903 S.W.2d at 613).

 We thus decline to accept Beets's invitation to announce a bright line rule of law characterizing an owner's grant of permission by broad reference to a legal tract as sufficient to defeat hostility for every use within the actual boundaries of the tract. Such a rule would decouple the antithetical relationship between permissive use and hostile use by requiring the fact-finder to ignore evidence suggesting that the parties did not reasonably believe the permission applied to the land in dispute. We reaffirm the longstanding principle that for a permissive use to defeat hostile possession, the fact-finder must determine from the evidence whether the permission was intended to apply to the land in dispute. This is not a determination that can be made as a matter of law. It is instead a determination that must be made based on the peculiar facts and circumstances of each case. *Id.*

Our conclusion is supported by the holding in *Underwood v. Hash,* 67 S.W.3d 770 (Mo.App. S.D.2002), a case not cited by either party. In that case, the owners of contiguous tracts contested title to a strip of property along the north boundary of plaintiff's tract. *Id.* at 773. The defendant bought his tract in 1987, a few months before the plaintiff bought her tract. *Id.* Before the plaintiff bought her tract, the defendant erected a fence along what he understood to be his south property line. *Id.* Shortly after buying her tract, the plaintiff told the defendant that she did not believe the fence to be the property line. *Id.* The defendant expressed his disagreement. *Id.* Thereafter, the defendant continued to use and maintain the land up to the fence line. *Id.* In 1990, the plaintiff secured a survey establishing that her north boundary line was, in fact, north of the fence line. *Id.* In 1996, she sent the survey to the defendant, along with a letter addressed to the plaintiff expressing an attorney's opinion that the plaintiff could "continue to allow the use of the ground by the abutting owner" without putting herself in "jeopardy of losing the ownership to the ground." *Id.* at 773–74. The defendant did not change his use of the disputed area after receiving the survey and the letter, and the plaintiff took no action to remove the defendant from the disputed area until 1999 when the plaintiff advised of her intent to move the fence. *Id.* at 776. In the ensuing lawsuit over title to the area north of the fence line, the plaintiff argued that the letter she sent to the defendant "compelled" the trial court "to find [as a matter of law] that defendant's possession of the disputed tract was permissive, thereby destroying any claim of adverse possession." *Id.* at 778. The Southern District disagreed. Noting that the defendant believed he owned the property north of the fence line, that he never stated he agreed with the survey, and that he never believed he needed permission to use the area north of the fence line, the court concluded that the trial court did not error in finding that a permitted use had not been established. *Id.* at 778–79. With respect to the plaintiff's effort to "compel"

467

the legal conclusion that her unilateral delivery of the letter constituted permission which destroyed hostility, the court observed:

> To extrapolate these contacts *into a required finding of permissive use* that would destroy a claim of adverse possession is stretching too far.... Plaintiffs' contention is premised on the conclusion that the communication of permission to a possessor of land by the record owner at any time during the limitation period for adverse possession prevents the possessor from acquiring title on that theory.

*Id.* at 779 (emphasis added).

The case before us is indistinguishable from *Underwood.* If anything, the facts in *Underwood* were more compelling for the property owner than those in the instant case. The occupant in *Underwood* was clearly notified on more than one occasion during the limitations period that the owner questioned whether the fence line was the boundary line. Here, in contrast, the trial court did not find that Rohner was ever notified that Beets questioned the boundary line between Lot 29 and Lot 30 until sometime after August 2011, well after the ten year limitations period had run. The property owner in *Underwood* secured a survey establishing her northern property line before the limitations period ran. In this case, though a contractor expressed his opinion to Beets about the location of her eastern property line before the limitations period ran, the trial court did not find that Beets agreed with the contractor, or undertook improvements or maintenance of Lot 30 consistent with the contractor's opinion. It was not until Beets secured a survey in August 2011 that Beets began to act as if she owned the Disputed Tract. By then, the ten year limitations period had run. Certainly, if the trial court did not err in failing to find a permissive use in *Underwood,* we cannot conclude that the trial court here erred in concluding that Rohner's use of the Disputed Tract was not permissive.

Even more compelling given the position advanced by Beets on appeal, *Underwood* rejected an owner's attempt to "compel" the legal conclusion that hostility is defeated by an owner's unilateral delivery of notice that a boundary line is in dispute, even where the notification is couched as "permission." We similarly decline to adopt a bright line rule that would compel the conclusion that a general grant of permission over a broadly referenced tract defeats hostility for every use of land within the broadly referenced tract, without regard to evidence of the parties' intent.

Under the facts and circumstances of this case, the trial court did not err in concluding that Rohner did not seek, and Beets did not extend, permission to use the Disputed Tract in June 2010. The trial court did not err in concluding that Rohner established hostile possession of the Disputed Tract for a continuous ten year period of time.

### Conclusion

The trial court's judgment is affirmed.[8]

All concur.

---

8. Beets's motion to strike (in part) the supplemental legal file submitted by Rohner is granted, and we strike from Rohner's supplemental legal file a post-judgment e-mail exchanged between counsel.

In his Brief, Rohner requested us to exercise our discretion under Rule 84.14 to increase his monetary judgment for trespass damages due to Beets's continued trespass on the Disputed Tract following the entry of judgment. Rohner withdrew this request during oral argument. We question whether the request could have been granted in any event. The trial court's judgment did not award Rohner injunctive or relief for continued trespass. Instead, Beets's alleged continued trespass on the Disputed Tract following the entry of judgment may permit Rohner to assert a new cause of action for trespass. *See Cacioppo v. Southwestern Bell Tel. Co.,* 550 S.W.2d 919, 925 (Mo.App.1977) (" 'A continuing trespass upon real property creates separate causes of action.... [I]f a trespass is followed by injury constituting a continuing nuisance, the damages for the original trespass must all be recovered in one action, but successive actions may be brought to recover damages for the continuation of the wrongful conditions, and in these the damages are estimated only to the date of the bringing of each suit....' ") (citation omitted) (distinguished in *Vaughn v. Missouri Public Service Co.,* 616 S.W.2d 540, 541 (Mo.App. W.D.1981) (permanent structures that create a continuing trespass permit but a single cause of action for damages)).