

# In the
# Missouri Court of Appeals
# Western District

**CHARLES E. COPPER JR.**
**AND ANITA J. COPPER,**

        **Appellants,**

                **WD85620**
                **OPINION FILED:**
                **June 27, 2023**

**v.**

**MINTER D. RINGEN AND**
**DIANE E. RINGEN, AS CO-TRUSTEES**
**OF THE MINTER D. RINGEN AND**
**DIANE E. RINGEN FAMILY TRUST,**
**U/A DATED MARCH 25, 2021,**

        **Respondents.**

**Appeal from the Circuit Court of Johnson County, Missouri**
The Honorable Brent F. Teichman, Judge

Before Division Three:  Janet Sutton, Presiding Judge, Cynthia L. Martin, Judge, and
Edward R. Ardini, Jr., Judge

Charles E. Copper ("Mr. Copper") and Anita J. Copper ("Mrs. Copper")

(collectively, "the Coppers") appeal the trial court's judgment in favor of Minter D.

Ringen ("Mr. Ringen") and Diane E. Ringen ("Mrs. Ringen") (collectively, "the

Ringens") on the Coppers' petition for quiet title by adverse possession and on the

Ringens' counterclaim for ejectment.  Finding no error, we affirm.

## Factual and Procedural Background[1]

In 1990, Mr. Ringen approached Michael Wutke ("Wutke"), a friend who owned and lived on thirty-five acres of rural land outside of Knob Noster in Johnson County, Missouri, about purchasing a portion of his property. Mr. Ringen and Wutke reached an agreement for the sale of 5.4 acres located in the southwest corner of Wutke's thirty-five-acre tract. A survey was obtained that legally described the 5.4-acre tract, and a conveyance deed was signed and recorded in 1990. Shortly thereafter, Wutke erected a boundary fence which ran north to south along the eastern boundary of the land sold to the Ringens. The Ringens built a home on their 5.4-acre tract.

In 1998, the Coppers expressed interest in purchasing the remaining property owned by Wutke. However, they were unable to obtain a loan in the amount Wutke desired. Wutke proposed selling a portion of his remaining land to the Ringens to reduce the acreage to be sold to the Coppers. The Ringens and the Coppers were receptive to this idea, which contemplated increasing the size of the Ringens' parcel to approximately ten acres, while selling the remaining acreage including Wutke's house, (approximately twenty-five acres) to the Coppers.

Wutke "measured north the amount of feet it would take to square off a little under five acres" to add to the Ringens' 5.4-acre tract. He arranged for a surveyor to memorialize his measurements, resulting in a 4.59-acre tract situated immediately north

---

[1]In the appeal of a bench-tried case, we view the evidence and reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary. *Sweeney v. Ashcroft*, 652 S.W.3d 711, 721 (Mo. App. W.D. 2022) (citation omitted).

of the Ringens' existing tract. Wutke informed the Coppers that he was having the property he intended to sell to the Ringens surveyed so that there would be "corner points and boundary markers."

While Mr. Copper was overseas, Wutke walked the property he intended to sell to the Coppers with Mrs. Copper. Wutke showed Mrs. Copper most of the property boundaries, except for a portion of the boundary for the 4.59-acre parcel he intended to sell to the Ringens. Heavy brush and precipitation made it difficult to reach this boundary, though Wutke offered to walk Mrs. Copper to the boundary. Mrs. Copper declined. Wutke informed Mrs. Copper that the contemplated property boundaries for the additional parcel he intended to sell the Ringens would be surveyed and there would be "good survey markers there before we close." Mrs. Copper advised that they could look at the boundary lines after the survey. Wutke also showed Mrs. Copper the fence he had built along the east line of the Ringens' original 5.4-acre tract, and explained, "this fence over here is [the Ringens'] property boundary between us."

On May 28, 1998, Wutke and the Coppers signed a contract for the sale of thirty-five acres, "less 10 acres more or less in the Southwest corner. (Pending Survey.)". On June 24, 1998, Whitehead & Associates prepared a survey of the additional 4.59 acres which was to be sold to the Ringens. That survey was delivered to the bank prior to the Coppers closing on their purchase from Wutke on June 30, 1998. The survey identified the 4.59-acre tract that Wutke intended to sell to the Ringens. That tract, along with the Ringens original 5.4-acre tract, was intended as the 10 acres to be excluded from the

3

description of the land being conveyed by Wutke to the Coppers. The Coppers moved into Wutke's house on July 21, 1998.

The additional 4.59-acre tract reflected in the survey was sold by Wutke to the Ringens on August 11, 1998. The 4.59-acre tract is contiguous to and immediately north of the Ringens' original 5.4-acre tract purchased in 1990. The tracts purchased by the Ringens combine to form an "L" shape, as the width of the 4.59-acre tract is narrower than the width of the 5.4-acre tract. The Coppers' twenty-five-acre tract lies to the east and north of the boundaries of the Ringens' contiguous tracts.

The Ringens' tracts are heavily wooded, though both tracts have pockets of pasture. One pocket of pasture lies in the northwest corner of the 4.59-acre tract purchased by the Ringens in 1998. Another pocket of pasture lies along the eastern boundary of the 5.4-acre tract purchased by the Ringens in 1990, and thus immediately west of the boundary fence Wutke erected in 1990.

The Coppers claim that between 1998 through 2020, they mowed and baled hay on these pockets of pasture in order to feed their horses. They did so until September, 2020, when the Ringens told the Coppers to remove hay bales, old vehicles and trailers the Coppers had placed on the pastures.

On November 4, 2020, the Coppers filed a petition against the Ringens for quiet title by adverse possession in the Circuit Court of Johnson County, Missouri. They claimed to have taken title by adverse possession to two tracts (the "disputed parcels"). The first tract is a rectangular-shaped parcel along the Ringens' side of the boundary fence built by Wutke in 1990 on the eastern line of the Ringens' 5.4-acre tract ("front

4

parcel").  The front parcel includes a pocket of pasture and a substantial wooded area on the north, west, and south sides of the pasture.  The east side of the pasture is contiguous to pasture owned by the Coppers that lies to the east of the boundary fence.  The second tract is a square-shaped parcel in the northwest corner of the Ringens' 4.59-acre tract. ("back parcel").  The back parcel is primarily pasture, with woods on the west, south, and east sides of the pasture.  The north side of the pasture is contiguous to pasture owned by the Coppers.  The Coppers' petition did not include a legal description for either of the disputed parcels, and instead attached two "Google Earth" aerial photographs with added "lines" to demark the purported boundaries of the disputed parcels.

During a bench trial on June 23, 2022, the Ringens testified that in August or September, 1998, they invited their new neighbors, the Coppers, over to their home to eat chocolate cake so they could get to know one another.  Mr. Ringen recalled:

> That's when we told them, well, we've got these two parcels of land and there's an open area and there's another one there, and you have four horses. It would be okay with us if you want to bale the hay off of each of those two and you can continue to do that year after year without asking.

The Coppers claimed that this conversation never occurred.  Instead, Mrs. Copper testified that "two or three years after" they purchased their land in 1998 and began cultivating the two pastures, Mr. Ringen told her that the front parcel looked nice after the Coppers removed the hay, and gave the Coppers permission to continue mowing the hay on that parcel.  Mrs. Copper testified at trial that at the time of this conversation, she did not know for sure who owned the front parcel, but that she did not question Mr. Ringen's claim of ownership.

5

Mr. Copper testified that he mowed and baled the hay on the disputed parcels every summer from 2000 to 2020. Mr. Ringen acknowledged that Mr. Copper baled the hay "maybe not every year, but yes, mostly." Mr. Copper claimed that he also maintained the rest of the disputed parcels by weed eating along the edges of the wooded areas, as well as clearing dead limbs and trees. Mr. Ringen testified that he never saw the Coppers in the wooded areas of either of the disputed parcels until 2020, and that there were never signs of any type of routine maintenance or upkeep other than the mowing and removal of hay in the two pastures consistent with the permission he had given the Coppers.

The Coppers testified that in 1998 when they purchased their property, they did not know where their property boundaries were, and that they still do not know where their property boundaries lie. Mr. Copper acknowledged that he knew some of Wutke's remaining land was being sold to the Ringens in 1998 in order to render affordable the property being purchased by the Coppers. However, Mr. Copper testified that "no one ever gave [him] a survey of those acres [or] ever told [him] what the acres were." Mr. Copper acknowledged that he never followed up with the Ringens or Wutke to determine the boundaries of the land owned by the Ringens. Instead, Mr. Copper testified that after he and Mrs. Copper purchased land from Wutke, he baled hay from the two disputed parcels, believing them to be a part of his property "because nobody stopped me." Mr. Copper denied that the fence Wutke built in 1990 was ever used as a boundary fence between the Coppers' land and the Ringens' land, and instead testified that he used the

6

fence to keep his horses enclosed. Mr. Copper testified that he still does not know how many acres he and Mrs. Copper own.

The Ringens presented testimony from Mark Holt ("Holt"), a licensed professional surveyor, who testified to the accuracy of the surveys of the Ringens' land which were prepared in 1990 and 1998. Holt located all existing monuments for those surveys, and he also identified markers on the property lines between the Ringens' and the Coppers' land, on the Ringens' property corners, and along the Ringens' northern property line. Holt testified that all of the corners he located were within an inch of where the 1990 and 1998 surveys indicated.

Mr. Ringen testified that he and Mrs. Ringen enjoyed walking in the wooded area of the front parcel and on over through the pasture to the boundary fence between their property and Wutke's (later the Coppers') property, and that prior to Wutke's sale of land to the Coppers, the pasture on the front parcel had not been mowed. When the Ringens purchased the additional 4.59-acre tract land from Wutke to the north of the 5.4-acre tract in 1998, they utilized the area in several ways. They planted a garden and had a brush pile that they would occasionally burn to have wiener roasts with their children, and they rode four-wheelers from their home and into the pasture.

Tax records and testimony from the Johnson County, Missouri Assessor and Collector at trial established that the Ringens' 5.4-acre tract and 4.59-acre tract have always been assessed for tax purposes to the Ringens, and that the Ringens have made all tax payments on the property. Exhibit A, a property ownership map produced by the

Johnson County, Missouri Assessor,[2] was admitted into evidence. Mr. Copper acknowledged that the map identifies the tracts for which the Ringens have been assessed taxes by Johnson County, and that the disputed parcels are within areas identified on Exhibit A as property owned by the Ringens.

The trial court took the parties' claims under advisement and on July 8, 2022, entered judgment in favor of the Ringens on the Coppers' claim of adverse possession, and in favor of the Ringens on their claim for ejectment ("Judgment"). The trial court concluded:

> The Court finds that there is no substantial nor credible evidence to find that the Coppers physically possess the entire disputed property. To the extent their occasional occupation was without color of title, they must show physical possession of the entire area claimed in order to prevail. To the extent the Coppers may have believed that the disputed property was theirs, the same would be insufficient to constitute adverse possession as their belief would be a "mere or mental enclosure of land." Additionally, the Court finds that the Coppers' possession was not hostile as the permission granted [to] them by the Ringens to continue to mow and remove hay from the disputed tracts defeats this element.

The practical effect of the Judgment was to quiet title in favor of the Ringens as to the 5.4-acre tract and the 4.59 tract purchased from Wutke in 1990 and 1998, respectively, which tracts are legally described in the Judgment.[3]

The Coppers appeal.

---

[2]Exhibit A indicates that it "is for tax purposes only" and "is not intended for conveyances, nor is it a legal survey;" however, at trial, the parties extensively referred to Exhibit A when describing the Ringens' and the Coppers' land. Moreover, the Johnson County assessor testified that his office creates maps "to the description in the deed . . . the best we can [and that] by and large," they are accurate.

[3]The metes and bound legal descriptions for the Ringens' tracts are included in the trial court's Judgment, and need not be repeated here.

**Standard of Review**

The standard of review for a bench-tried civil case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Wright v. Nash*, 652 S.W.3d 246, 252 (Mo. App. W.D. 2022). "We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* (quoting *Schieve v. Meyer*, 628 S.W.3d 726, 731 (Mo. App. W.D. 2021)).

**Analysis**

The Coppers raise two points on appeal. The first point asserts that the trial court erred when it concluded that the actual possession and hostile possession elements of their claim for adverse possession had not been established because the trial court misapplied the law when it concluded that actual possession requires physical possession of the entirety of a disputed parcel, and because the finding that possession of the disputed parcels was not hostile since the Ringens granted the Coppers permission to mow on the disputed parcels was against the weight of the evidence. The Coppers' second point on appeal argues that the trial court's judgment in favor of the Ringens on their claim for ejectment was in error because "it would be logically impossible for [the Coppers] to be in actual and hostile possession for ejectment" if they "were not in actual or hostile possession " for purposes of their adverse possession claim.

*Point One*

The Coppers' first point on appeal is impermissibly multifarious in violation of Rule 84.04(d) in that it raises multiple, divisible claims of error by claiming both that the

9

Judgment was against the weight of the evidence and also that the trial court erroneously applied the law with respect to two distinct elements of the adverse possession claim. *Jones v. Leath & Sons, Inc.*, 653 S.W.3d 629, 635 (Mo. App. W.D. 2022). "Multifarious points on appeal are subject to dismissal, but we prefer to decide appeals on their merits if we are able to discern the substance of the argument." *Steinbach v. Maxion Wheels Sedalia LLC*, 637 S.W.3d 493, 501 n.4 (Mo. App. W.D. 2021) (citation omitted). We have elected to do so here, and begin by addressing the Coppers' contention that the trial court's finding that possession of the disputed parcels was not hostile was against the weight of the evidence. Specifically, the Coppers contend this finding was against the weight of the evidence because the Ringens' testimony at trial about a 1998 meeting where permission was granted to the Coppers to mow the pastures on the disputed parcels contradicted the Ringens' earlier deposition testimony on the subject.

To prevail on a claim of adverse possession, it was the Coppers' burden to prove that their possession of the disputed parcels was "(1) hostile, that is under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for [ten] years prior to the commencement of action." *Coleman v. Hartman*, 626 S.W.3d 289, 296 (Mo. App. W.D. 2021) (quoting *A2 Creative Group, LLC v. Anderson*, 596 S.W.3d 214, 219 (Mo. App. W.D. 2020)). The "failure to prove even one of the elements of adverse possession" defeats the Coppers' claim that they adversely possessed the disputed parcels. *Id.* at 297.

"A grant of permission is inconsistent with the hostility element of adverse possession." *Daniels-Kerr v. Crosby*, 484 S.W.3d 798, 802 (Mo. App. W.D. 2016)

10

(citing *Rohner v. Beets*, 396 S.W.3d 458, 462 (Mo. App. W.D. 2013)). "The claimant's occupancy must be in defiance of, rather than in subordination to, the rights of others." *Id.* (quoting *Cooper v. Carns*, 263 S.W.3d 729, 733 (Mo. App. W.D. 2008)).

"A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the evidence at trial, the existence of a fact that is necessary to sustain the judgment." *Nash*, 652 S.W.3d at 254 (quoting *Meseberg v. Meseberg*, 580 S.W.3d 59, 65 (Mo. App. W.D. 2019)). In judging credibility and assigning weight to the evidence and testimony, the trial court "is free to believe none, part, or all of the testimony of any witness." *Id.* (quoting *Cerna-Dyer v. Dyer*, 540 S.W.3d 411, 415 (Mo. App. W.D. 2018)). And, when the evidence presents different, but reasonable conclusions, we must defer to the trial court's assessment of that evidence. *Id.* (citation omitted).

As the party asserting an against-the-weight-of-the-evidence challenge, the Coppers must follow a four-step analytical process:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

11

*Reichard v. Reichard*, 637 S.W.3d 559, 588-59 (Mo. App. W.D. 2021) (quoting *Interest of B.K.F.*, 623 S.W.3d 792, 796-97 (Mo. App. W.D. 2021)).

Although the Coppers' brief identifies a factual proposition which is necessary to sustain the Judgment--that the Ringens granted the Coppers permission to continue mowing and baling the hay on the disputed parcels--their brief fails to complete the rest of the required analysis for an against-the-weight-of-the-evidence challenge. The Coppers have not attempted to address the second step of the analysis as they have not identified the favorable evidence in the record supporting the finding that the Ringens granted them permission to mow the pastures on the disputed parcels. The Coppers thus ignore that both Mr. and Mrs. Ringen testified at trial that they had a meeting with the Coppers in 1998, and that during that meeting, the Ringens gave the Coppers permission to mow the pastures on disputed parcels for hay. And the Coppers ignore that at trial, Mrs. Copper agreed that Mr. Ringen did give them permission to mow and bale the hay on at least one of the disputed parcels, albeit "two or three years after" they purchased the property. Mrs. Copper's testimony alone contradicts the Coppers' claim that their use of the disputed parcels was hostile.

In disregard of the favorable evidence that supports the trial court's finding, the Coppers' brief instead argues that the finding is against the weight of the evidence because the Ringens' trial testimony about the 1998 meeting contradicted testimony given by the Ringens in pretrial depositions. However, the Coppers' brief fails to explain ***how*** the Ringens' testimony purportedly changed. Instead the Coppers' brief summarily alleges that: (1) Mrs. Ringen testified in her deposition that Mr. Ringen and Mr. Copper

12

met and reached an agreement concerning the Coppers mowing the hay on the disputed parcels, but "changed her testimony at trial, claiming to remember things more clearly at trial than during her deposition;" and (2) Mr. Ringen "similarly [] claimed a meeting between himself and [Mr. Copper] where an agreement was had during his deposition but told a significantly different version of events during trial."

Even assuming there were material differences between the Ringens' deposition and trial testimony, the conflicts, *if any*, have not been resolved by the Coppers in accordance with the trial court's explicit or implied credibility determinations. As a result, the Coppers have failed to address the third analytical step required to raise an against-the-weight-of-the-evidence challenge.

Finally, the Coppers have not engaged in the fourth step of the required analysis for an against-the-weight-of-the-evidence challenge, as they have not explained why the favorable evidence is so lacking in probative value that it fails to induce belief in the proposition that the Ringens granted the Coppers permission to mow and bale hay on the disputed parcels. Instead, they assert, without citation to any authority, that absent corroboration of the Ringens' trial testimony, or a contemporaneous writing reflecting an agreement to permit the Coppers to mow and bale the disputed parcels, "serious consideration as to what the weight of the evidence supports" is required.

The Coppers have not sustained their burden to establish that the trial court's finding that the Ringens granted the Coppers permission to mow and bale hay on the disputed parcels was against the weight of the evidence. Consequently, we find no error

in the trial court's conclusion that the Coppers' possession of the disputed parcels was not hostile for purposes of their adverse possession claim.

As a result, we need not address, and deny as moot, the Coppers' second contention that the trial court committed legal error because it used the wrong legal standard to conclude that the Coppers did not have actual possession of the disputed parcels. *Coleman*, 626 S.W.3d at 297 (holding that the "failure to prove even one of the elements of adverse possession" defeats the claim).

Point One is denied.

### *Point Two*

In their second point on appeal, the Coppers assert that the trial court erred when it granted the Ringens' claim for ejectment because "it would be logically impossible for [the Coppers] to be in actual and hostile possession for ejectment" in light of "the trial court's previous finding that [the Coppers] were not in actual or hostile possession of the same land" for purposes of their adverse possession claim.

The premise of the Coppers' point on appeal is fatally flawed. "A *prima facie* case for ejectment can be established . . . by showing: (1) proof of title in the plaintiff; and (2) defendant's retention of possession of said property under no valid right after a demand for surrender has been made." *Farm Properties Holdings, L.L.C. v. Lower Grassy Creek Cemetery, Inc.*, 208 S.W.3d 922, 928 (Mo. App. S.D. 2006) (quoting *Hearod v. Baggs*, 169 S.W.3d 198, 203 (Mo. App. S.D. 2005)) (citing section 524.080). Though possession of premises by a party under no valid right is an essential element of a claim for ejectment, there is no requirement that the possession be hostile, that is with "the

14

intent to occupy the disputed property ***as his own, exclusive of the rights of all others***"

for a continuous period of ten years. *DeVore v. Vaughn*, 504 S.W.3d 176, 182 (Mo. App.

W.D. 2016) (emphasis added). Nor is there any authority for the proposition that the

possession required to support an action for ejectment is the functional equivalent of the

"actual possession" required to support a claim of adverse possession, proof of which

may vary depending on the nature of the disputed premises.

In fact, where the record title of disputed parcels is clear, as in this case,[4] the only

defense to a claim of ejectment is a claim of adverse possession. *Courtner v. Putnam*, 30

S.W.2d 126, 130 (Mo. 1930) (uncontroverted evidence indicated that plaintiff held record

title to land in dispute and therefore defendant's only defense in plaintiff's ejectment

action was a claim of adverse possession of the land in dispute). The Coppers had the

burden to prove all elements of their claim of adverse possession, and failed to do so, as

we have already explained. *Indian Creek Land Co. v. Bradford*, 82 S.W.2d 589, 591

(Mo. 1935) (in suit for ejectment where plaintiff held record title and defendants claimed

title only by adverse possession, defendants carried the burden of proof of all elements on

their claim of adverse possession).

---

[4]The Coppers acknowledge that the Ringens were conveyed 5.4 acres in 1990 and 4.59 acres in 1998 from Wutke, as evidenced by recorded deeds which were attached as exhibits to the Coppers' petition, and which were introduced into evidence at trial. The boundaries for the Ringens' tracts were established by surveys that were confirmed by a professional surveyor who testified at trial. The Coppers concede that the disputed parcels are on the Ringens' land. The Coppers have never claimed that they own all or any part of the disputed parcels by virtue of their conveyance deed from Wutke, and have only claimed that they own the disputed parcels because they have been adversely possessed from the Ringens--the record title holders.

15

The trial court did not err in entering judgment in favor of the Ringens on their claim for ejectment.

Point Two is denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur